And that will be case number 25-3093, Stewart v. City of Topeka. We do have different people arguing, so we'll go ahead and excuse counsel from the last case. And we'll let counsel for the appellant go ahead and proceed. Thank you, Your Honor. Please the court. My name is Amanda Vogelsberg, and I represent the City of Topeka and Brian Wheelis in case number 25-3093. I'd like to try to reserve three minutes for rebuttal if I'm able. As you guys know, this appeal arises from a trial that went far beyond the only claim left in the case, which was the 2021 major promotion decision, and whether or not that decision was discriminatory. Instead of focusing on that decision, what the jury heard were facts and allegations that were anecdotal, that had no nexus to the decision maker, who was Brian Wheelis. Facts about the 2015 promotion of Michael Cross. Facts about a 2018 investigation into Kim Hanica and Gerilyn Wheelis, and whether Kim Hanica no longer was a person who was in connection, who worked contemporaneously with the DEA, which had nothing to do with Brian Wheelis as the decision maker. It had to do with the former chief, who was Bill Cochran at the time. I think the real question that we have to answer right off the bat, before we even get to any of that, is whether or not you preserved your objections, your error here. We see in the briefs where you point out several places, we're able to go back and look at some of the transcript and so forth. I'm telling you, I'm having a hard time finding the specific objections that were made at trial that would have preserved this type of error. You, for instance, state that you had a standing objection. Where in the transcript can we find where the district court agreed and recognized a standing objection to any of the testimony that you are now saying he erred in allowing in? We pointed to that in the motion to reconsider argument portion of the brief, which is in volume 8, pages 15 to 17, the standing objection. There was further discussion during that moment about the motions in limine and the arguments on the motions in limine, where the judge referred back to those motions. I think you have to look at it in context. In the motions in limine, and even what you're talking about with regard to the standing objection, the district court kept saying, well, we'll have to wait to see. Or I'll make that ruling. I forgot exact words. But basically, he was saying, we're going to have to wait until trial, and then you can make further objections if you'd like. He didn't make any definitive sort of holdings on that. He didn't make any direct orders on that, as far as I can see. Your Honor, he did make a definitive decision that Kim Haneke, Donna Eubanks, and Jennifer Cross were MeToo witnesses. And the whole objection with regard to MeToo incorporates that Rule 401. Is it relevant evidence in Rule 403? They were fact witnesses as well, right? They were fact witnesses as well. That's correct, Your Honor. I think Cross and Haneke were both fact witnesses. So how could he, first of all, rule on a motion in limine to completely exclude their testimony when there's going to be some part of their testimony that's probably going to be admissible? Correct. But under Mia, and under the case in Mia, you're looking at whether or not that motion in limine preserves that continuing objection and doesn't make it repetitive and disrupt the trial and continuing to object about the main issue, which is, is this proper background evidence? And I think there's a balance between, you know, how far do you let background evidence come in? And I think the circuit has said, okay, we've got to review all the facts. And it's not just, it's very fact-intensive review. One of the things we look at is same decision maker, the relevancy of time, and more importantly, what type of claim is left? This was a disparate treatment claim. And I think that's relevant when you go and look at the other cases that appellee cites to you on when background evidence is allowed to come in. But you have to object. And there's places in the record where witnesses go on for an hour before there's an objection. And I question whether those are really objections to begin with. For instance, you cite, I think you cite to page 174 of the transcript for what you claim is an objection to the testimony. And looking at it, it's clear to me that it's not an objection. It's a colloquy. It's a bench conference where the lawyers are sort of talking to each other. The word objection is not even stated in that whole colloquy. So how do you, how can you make the argument that that was an objection and the district court erred in ruling on that when he didn't even make a ruling because there was nothing to rule on? I understand what you're saying. And you're right. There was no terminology that was verbalized as objection. But what council kept coming up to the bench and what everybody knew at that time was the city of Topeka had a fundamental disagreement with appellees on what was proper Me Too or background evidence and when it evaded into pattern and practice type evidence that was improper. When it was evading into section 1983 evidence, they're discussing the context of that relevancy and whether it's appropriate. Versus prejudicial in the context of what they were discussing. And I think the judge was continuing to just simply disagree with the city of Topeka's council. So let me, let me stop you for a minute. The problem is, is we don't know that. We only have what's on the paper, what's in the transcript. And the transcript's equivocal. The transcript has, and look, I understand the position you're in of objecting, having to object all the time. And disrupt the flow of trial. Irritate the trial judge because you won't let any testimony come in without an objection. Irritate the jury for that reason. I get all that. But ultimately, for purposes of review, when you're at a bench conference and you say, you know, we have, you know, in fact, you don't use the word object usually. You're, judge, this is a so and so and it's Me Too evidence and it's outside the scope of the summary judgment order. And, and he equivocates. And nobody says, judge, I have an objection. I need a ruling. So we have a bunch, and then we have, where you did object, he mostly, he mostly sustained the objections. Correct. But we did ask to strike Jennifer Cross's entire testimony at least twice. And he overruled that and, or just didn't make a ruling on the record in one instance. Right. Well, that, I mean, but, but that's an extreme, I mean, you wouldn't, that's a very hard case when you didn't object to most of it at the end of testimony to, to move to strike the entire testimony. Well, Your Honor, we objected about six to seven times during Cross's testimony. And at one point he told plaintiff's counsel to move along because it was veering off into non-relevant, repetitive type of testimony that wasn't even relevant. That was not even related to Harden and Stewart's promotion claim. And counsel I, I think what, where I'm struggling a little bit is in responding to the, to my colleagues' questions. You're both trying to say how often you objected and that you didn't need to object after the district court definitively ruled on the first day of trial in response to the motion to reconsider. So trying to make sense of what you understood the law required, it would seem that if you're arguing 103B here, and your argument is we got a definitive ruling as to Cross and Hanneke and Eubanks, and as to, as the district court said, you know, if Joe Smith shows up, then we'll have to deal with that then, but you understood you had a definitive ruling. I'm trying to describe what I understand your argument. Correct. And that would, under 103B, relieve the need to have to object again. That's correct. And that, that aligns with the Meeha slash Alcorin case on if it's definitive, if it was clear from the pre, remember this is not, remember the context, just less than 30 days before trial, you had motions in limine filed, counter briefs to that, a motion in limine argument, and you had a pretrial brief, all setting forth the same evidence that ended up coming into trial that went well beyond the pale of the background evidence under Meeha. Right, so all the, I'm sorry, Your Honor. No, no, so I think you're being very helpful. I appreciate it. I think what you're saying, if I understand correctly, is that if you're relying on 103B, and you got a definitive ruling on the first day of trial, you didn't need to say anything else ever again. Is that your position? Correct, although this court has pointed out it is prudent for counsel to continue to object, and as the trial court explained, and we're not picking on the trial court. The trial court was put into this position because we had a change of judges probably right at 30 days out from trial. This was not the same judge that ruled on the summary judgment brief, but you're right, Your Honor, under, well, at least your point is right. Under Rule 103B, it states that if you don't make the objection on specific grounds, if it's apparent from the context, you've preserved that objection. And that's where the Meeha. I'm not talking about context. That's different. I'm talking about once you receive a definitive ruling. Where I'm stuck is trying to understand the district court's first day of trial ruling on the motion to reconsider as a definitive ruling, and if we agree with you that it is a definitive ruling, then it seems that you have an opportunity for preservation here. Correct. Just purely, I mean, maybe that's not the best practice, and I'm sitting with a district court judge and a former magistrate judge who know far better than I do what good practice looks like, but just precisely under the terms of 103B, it seems that would give you an opportunity to preserve your claim. I agree with that, Your Honor. And keep in mind, his ruling on the first day of trial was definitive. It was, I'm going to allow these MeToo witnesses, but keep in mind, counsel, this is interlocutory. We could hear different evidence than we anticipate hearing that may be relevant or it may not be relevant. He was trying to avoid mistakes that a lot of trial court, or some trial courts, have made of having a per se rule going into it, and so I understand what he was trying to balance, and I think, again, when the court's reviewing this, it's got to review the entire context, the procedural history, which is very key to this case, as well as the entire trial testimony which came in, which was overwhelmingly about Jennifer Cross's claim, overwhelmingly about the dismissed Section 1983 pattern and practice type of evidence of the city having a policy of discriminating against promoting women. Those claims were dismissed. And more importantly, on our motion in limine, the court granted that part of our motion in limine saying, yes, pattern and practice in Section 1983 should not be admitted into trial. But if, and I see I'm almost out of time on reserving my three minutes. I'm gonna give you a little latitude, so go ahead. But importantly, on those motion in limine rulings, those are critical, because on one hand, we were told in his rulings, both on the motion in limine and the motion to reconsider, we're gonna, he's gonna allow the plaintiffs to present background evidence and Me Too witnesses, although I don't think they were Me Too because Judge Broome's already ruled that wasn't discrimination. Kim Hanica was more about nepotism, definitely not about discrimination. If we look in the record and Hanica was testifying about her nepotism related issues, are we gonna see a definitive objection to that testimony? No, you're not, your honor. Okay. You're not. So that's, I mean, that's problematic. I mean, this is the thing you have to, as at trial, you have to presume that there are gonna be attempts to put things in the record that you don't want there, and you have to be ready to object. Your honor, it's problematic if you don't agree with our position that under Rule 103, that was preserved. It's also problematic if you don't, then go to plain error rule and see how harmless and substantial and interwoven the edge over, I mean, it went right off the cliff from background evidence into trying the entire case that had mostly been dismissed at the summary judgment. Let me ask you one more, and I'll let you sit down, but I'm just curious, take Cross's testimony at trial. I mean, what's objectionable about that, at least in part to the extent she gets up and says, listen, my husband, he doesn't even wanna come to work. These two are better than he is. They show up, he doesn't show up. He's got these problems as a cop. He's not the best person for this job. I mean, that seems like pretty good evidence of their claim. What's wrong with that? There's nothing wrong, but that was about 1% of her entire testimony. The rest was about the union negotiated labor agreement that did not apply to management level employees and that promotion process, which would confuse and prejudice the jury. The other part- Let me just ask you this. So was it like the union testimony? Was that part of the motion in limine? It certainly would have been part of that pattern and practice section 1983, which the court granted should not be allowed in evidence. I mean, these are all nuanced items where it comes up at trial. Okay, so you get a ruling. Okay, yeah, you're right. I don't want any pattern and practice evidence. So she starts testifying about union practices and you say, objection, that was ruled on at the, which you didn't, but that was ruled on in the motion in limine. And then the next step is the other side gets up and they say, no, no, judge, this is relevant background information. They make an argument about it too. And the court has to decide. I mean, I'm not trying to pick on everybody. I was equally tough with your opposing counsel on the last case, but it's terribly difficult to review these things where the rulings are equivocal and there aren't contemporaneous objections. But I'm gonna give you a little time for rebuttal. Thank you, I see I'm out of time and I appreciate that time for rebuttal. It is difficult, but under the rules, you have to look at, is it harmful and is it substantial? Thank you. Thanks counsel. Oh, okay. Oh, I'm sorry. One more question, sir. You just stated a while ago that with regard to cross this testimony, at least part of it was relevant and it should have been admissible, but then you move to exclude the whole testimony and you're sort of complaining about the judge denying that. So this is the problem, is if she also has relevant and admissible testimony, she's a fact witness on things outside of what the motion in limine might've addressed, wasn't it incumbent upon you to object when it got into those parts of the record? I just don't see those objections, those clear objections. And your honor, the record is what it is and maybe those objections weren't as clear. The objections were relating to the motion in limine and the discussion from the motion in limine and they were phrased as, this is not a need to witness, this is not relevant. And it ties back into those decisions that were made on the motion in limine and motion to reconsider. And under rule 103 and Mejia's interpretation of that rule, that should stand. Thank you, your honor. Thank you, counsel. May it please the court. Christina Nielsen on behalf of the appellees. So under this court's abuse of discretion standard, we look at what the trial court did, right? What did the trial court consider? And what opposing counsel stood up here and said was that the trial court looked at the motions in limine, the counter arguments, the arguments at trial, the arguments at the pretrial. And initially, when we consider the abuse of discretion standard, that is just the opposite, right, of arbitrary, capricious, or whimsical. The trial court clearly took a very, very close look at this issue. Then it came down to, okay, did the trial court make a definitive ruling that these witnesses should not testify? And I wanna point out briefly that in the opening brief of the appellants, they say they preserved this through their motion in limine initially. That's one of their arguments. But in their reply brief, they seem to have stepped away from that, or I think they unequivocally stepped away from that. If you look at page 13 of their brief, they say the motion in limine does not meet the president's preservation requirement and triggered the need for contemporaneous objections. So then we look at the record and what contemporaneous objections were made. And I think that this court has pointed out in questioning of opposing counsel that those objections simply were not made. At the beginning of the trial, the defendants again objected based to Hanneke and Cross's Me Too testimony. Again, the trial court did not make a definitive ruling. It said, I don't know what the evidence is gonna be. And that makes sense, right? Because as this court has noted, both Hanneke and Cross, and an opposing counsel admitted this today, both of them were fact witnesses and Me Too witnesses. Counsel, what is equivocal or not definitive about the district court's ruling on the morning of trial responding to the motion for reconsideration? What is not definitive about that ruling? Because the trial court said that the evidence would need to come in as it comes in, we'll take a look at it. He did say as- He said you identified the three witnesses, meaning Cross, Hanneke, and Eubanks, but also you may have other concerns for other potential testimony. And so with regard to the three witnesses, I think that they have been established as sufficiently relative to the two particular plaintiff's claims. I mean, what is not definitive about that? I understand that you have other arguments about the need for contemporaneous objections, maybe in response to sort of the evolving nature of the appellant's preservation theory. But as to that, why should that be anything but definitive? It's definitive that he was going to let them testify, but it was not definitive as to the scope of their testimony. And that's reasonable. And as we know, and as you just pointed out, Judge Rossman, that these things develop in trial as the case is presented. What testimony comes in, what testimony doesn't come in. And there were no contemporaneous objections at trial. Even when Hanneke and Cross were called to testify and the defendants stood up and made their me too objection, the trial court again said, I can't give you a continuing or standing objection. He didn't use those words, continuing or standing objection. But he said, you have to object as the evidence comes in. The defendants understood this, but they didn't object. Now, what I also find curious about the appeal is that today was actually the first time that I've heard what testimony was actually, they claim was objectionable, right? In their brief, they just say, well, in their motion for new trial, they say that the trial court should have struck all testimony of Hanneke and Cross. But on appeal, they say the trial court should air when it did not strike the me too testimony of Hanneke and Cross. Two points with respect to that. One, we pointed out in our brief, we don't know what testimony you're talking about, right? Because they were disclosed as a fact witness and as a me too witness. So help us out here, what testimony do you find objectionable? And we didn't get that in the reply. What we got was today, the testimony that it claimed was objectionable. Now, it occurs to me that when a witness is both a fact witness and a me too witness, that the need to object, to contemporaneously object, and specify exactly what that objection is, is perhaps even more important. And that's what happened in this case, or the lack of objections in this case. So, the other point is, in their brief, they talk about the testimony of Hanneke and Cross and others. But we don't know who those others are, right? What test, again, what testimony, what witnesses are we talking about? Now, the defendants make this point about their motion to strike Cross' testimony. And, which was made at the conclusion of Cross' testimony. And I would point out, in page 20 of our brief, we set out what exactly that colloquy was at the close of Cross' testimony. And that is, the defendant believed that there was no specific objection. They objected, we object, defendants say, because the testimony of Cross showed nepotism, not discrimination, and asked that the Me Too evidence be stricken. But again, what evidence was the Me Too versus what was the fact part of her testimony? It was unclear to the trial court, or may have been unclear to the trial court. It's certainly unclear to me, looking at the cold record, which is what you have in front of you. I wasn't part of the trial team. But, not only did their unspecified objection fail to satisfy the Rule 103 requirements for specificity, they don't object based on prejudice. They don't object based on lack of probative. They don't make any 401, 403 objection. So, the trial court properly denied their motion to strike. But, let's assume, for argument's sake, that the city adequately preserved its claim of error here. Is there any portion of either Cross' or Hanica's testimonies that would not have met our standard for admitting anecdotal evidence? I mean, is your position that everything was wholesale admissible? I believe it was. Well, two things. Yes, it was, because it related to the same decision maker. Cross testified factually about how the promotional process occurs. Then she talks about her promotions, her lack of promotions. And all of that, all of her testimony, as I recall, reading the transcript, related to the same decision maker. So, her testimony. There's a lot of her testimony. I mean, with Hanica, I might agree with you in terms of answering my own question. But, with Cross, there's a lot of, there's a lot of information in her, and she testified for many, many, many transcript pages. But, some of it is not temporarily relevant. Some doesn't involve chief wheels. So, the question then becomes, whose job is it to sort through all of that in the absence of contemporaneous objections, I guess? Well, I think the lack of contemporaneous objections is indicative of the fact that defendants deemed it admissible. They didn't object. So, it was properly admissible, and it was properly considered by the trial court, or by the jury, in this case. And, as you said, in Hanica, she did testify about wheels, but her testimony was like five pages of the transcript. So, to say that that permeated the entire trial is, I think, a bit of a stretch. But, as far as Cross, yeah, Cross did testify extensively. But, again, the lack of objections. But, not only did much of her testimony involve the same decision maker, much of her testimony was regarding the, the boys club that was existent in the police department. And, again, she referenced the boys club, but that wasn't objected to. So, her testimony is not only admissible based on wheels, wheelist, who was the decision maker, but her anecdotal evidence of what happened to her at the Topeka Police Department. The last thing, if I may, would, and this addresses your question, I believe, perhaps slightly more, is that the defendants don't dispute that there was a prima facie case made, right? They come up and say, and I say, and they're brief, and they said in post-trial motions, that we proved that there was a legitimate, non-discriminatory reason. And, that there was a legitimate non-discriminatory reason and because it boiled down to pretext, that's the other reason that Cross's testimony was admissible, was because she was entitled, or the two plaintiffs were entitled to use whatever evidence might show that the Topeka Police Department's explanations was unworthy of credence. And, this comes up also in the defendant's law of the case argument. And, I would note that, with respect to the law of the case, you know, if you look at page one, volume six, pages 143 and 144 of the transcript, of the record on appeal, which is the judge's order on summary judgment, if we're gonna look at the law of the case, the law of the case, one, as explained in our brief, it doesn't apply. But, if there was any credence to the defendant's argument that there was a law of the case, the trial judge found that the defendant's explanations were unworthy of credence and the judge laid out those reasons. So, if we're talking about the summary judgment argument or the summary judgment order being the law of the case, then why is that not the law of the case too, right? And, why wouldn't plaintiff have been entitled to a directed verdict at that point? But, we know it's not the law of the case. So, their argument, their final argument in their brief regarding law of the case, about whether or not the elimination of Cross's claim prevented her from testifying in two other cases, this court has never required that there be an actionable claim for there to be admissible evidence. So, because the defendants, I think their brief is lacking in the identification of objections, it's lacking in identification of the testimony about which they complain. And then, if you look at the substance of their arguments, there is no objection, no contemporaneous objection. They were not granted a standing or continuing objection at trial and the jury properly considered the evidence because they didn't deem it inadmissible or that it shouldn't have been admitted. So, for all of those reasons, judges, we ask that you affirm the verdict of the trial court. Thank you, counsel. Any questions of the judge? Judge Williams? Okay. Thank you. Counsel, we'll give you a minute and a half. Thank you. Your Honor, you guys can decide whether we properly cited to the record on appeal in our brief, which I believe we did. We cited to the objections. We cited to the objection even before Hanica was introduced where counsel came up to the bench and said, we're objecting on the basis of Me Too relevance and repetitiveness of Hanica and Jerry Monismith testifying and the judge again ruled, we're gonna see what comes in. We believe those were, we believe those objections were preserved, but even if you don't- But that was before they uttered a word, right? That's correct, Your Honor. That's correct. So, even if we don't, where does that get us? It's the plain air. It's can you say for certain that the jury got a case that was relevant with relevant information that was not interwoven into non-admissible evidence? And I don't think you can. I think it's harmful. I think it clearly outweighs what this court contemplates on background evidence given most of the time it's a disparate impact case or a class action lawsuit where a court lets opposing counsel venture that deeply into dismissed claims. For that reason, we ask that you remand back to the trial court for a new trial on the 2021 major promotion. Thank you. Thank you, counsel. The case will be submitted and counsel are excused.